# PHIPPS *v.* YOST.[1]

*(Circuit Court, S. D. New York. 1886.)*

1. **PATENTS FOR INVENTIONS—CHANGE OF LOCATION OF PARTS.**
    Where an element of a claim performs no other or different function in a new combination than it has performed in other combinations, there is no invention in merely changing its location in the new combination to adapt it to a modification of form of one of the other elements.

2. **SAME—PHIPPS' PATENT—REISSUE NO. 9,690—TYPE-WRITERS.**
    The sixth and eighth claims of this patent, for the combination, in a typewriter, of key-levers, provided with keys at a point between the fulcrum and the point of attachment to the type-levers, and a shield for covering the pivoted ends of the key-lever, are void for want of patentable novelty.

3. **SAME.**
    The seventh claim of this patent must be limited to the peculiar form of type-levers described in the first claim; and, in view of the prior state of the art, the patentee is not entitled to invoke the doctrine of equivalents.

This was a bill for an injunction to restrain infringement of complainant's patent, reissue No. 9,690, dated May 3, 1881, for an improvement in type-writers, the original patent being No. 229,458, of June 29, 1880. There was a prayer for damages, and for an account of profits. Infringement was alleged of the fourth, sixth, seventh, and eighth claims of the reissue patent sued on. The fourth claim of the patent covered specific spacing mechanism for type-writers, and the court decided that it was not infringed by defendant's caligraph. The sixth and eighth claims of the reissue covered a combination, in a type-writer, of key-levers, provided with buttons or keys for the fingers of the operator, and a hand-rest or shield, extending from the pivoted ends of the key-levers, in claim 6, up to a hinged frame or spacing mechanism, and, in claim 8, to a point in advance of the pivotal point of the key. The key-levers were of the third order of levers; their front ends being pivoted adjacent to the operator, and having buttons or keys, marked with the various characters, intermediate their pivoted ends and the point of attachment to the type-levers. Levers of this kind were old in type-writers, and shields for covering up the exposed ends of type-writer levers were old; but patentee was the first to combine such shields with levers of the third order in type-writers. The specification stated that this shield was useful as a hand-rest, and it was so designated in the sixth claim; but it was called a shield in the eighth claim, and the testimony showed, and the court found, that this shield was not useful as a hand-rest, and that it could not be used while the key-levers were being used. The seventh claim was for a combination of key-levers, provided with keys located upon said levers between their pivoted ends and the point of connection to the type-levers, and type-levers provided with types at their striking ends. A peculiar form

---

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

of type-lever was described in the patent, and claimed in its first claim; but the seventh claim was not limited to this peculiar construction of type-lever. The combination of elements in this claim was shown by the prior art, but the peculiar form of type-lever was new. Defendant used the combination of elements described in this claim, but did not use complainant's peculiar form of type-lever.

*Worth Osgood,* for complainant.

*H. D. Donnelly,* for defendant.

WALLACE, J. Infringement is alleged of the fourth, sixth, seventh, and eighth claims of the reissued letters patent No. 9,690, granted to the complainant, and bearing date May 3, 1881. It is unecessary to recapitulate the reasons, stated orally upon the hearing of the cause, for the conclusion that the defendant does not infringe the fourth claim of the patent.

It must be held that the inventions specified in the sixth and eighth claims are destitute of patentable novelty. Each of these claims is for a combination, in a type-writer, of key-levers, provided with buttons or keys for the fingers of the operator, and a hand-rest or shield extending from the pivoted end of the key-levers, in claim 6, up to a hinged frame or spacing mechanism, and, in claim 8, to a point in advance of the pivotal point of the levers. The key-levers belong to the third order of levers, and consequently the elements of the claim had not been brought together previously in any type-writer as they are in the machine of the patent. The only useful function of the hand-rest is to protect the key-levers from exposure, by covering them up. The cover is necessarily located between the pivoted ends of the levers and the finger-keys, because there are no other exposed parts of the levers which can be covered up. Although this cover is termed a "hand-rest" in the sixth claim, it is nothing but a shield or cover, and is termed a "shield" in the eighth claim. It performs no office conjointly with the key-levers, and their action in the machine is wholly independent of any assistance from the cover or shield. It is not useful as a rest for the hand of the operator when working the machine, because the keys cannot be efficiently manipulated were the operator to rest his hand upon the cover; nor is it useful to protect the key-levers themselves from the hand of the operator, because the operator could not rest his hands upon the key-levers while at work. The old form of Remington type-writer had the cover or shield located so as to protect the exposed ends of the key-lever. As the key-levers in that machine were levers of the second order, and not of the third, as here, they were not exposed between the operator and the keys. The patentee merely changed the location of the cover or shield to meet the different points of exposure, which, when levers of the third order are employed, is between the operator and the keys. There was no patentable novelty in aggregating together the cover or shield and the levers of the third order.

The invention specified in the seventh claim consists of a combination, in a type-writer, of key-levers and type-levers. By the express terms of the claim the key-levers are such as are provided with keys located upon the levers at a point between the fulcrum and the point of attachment to the type-levers. They are key-levers of the third order of levers, the finger-keys being located between the pivoted ends of the levers and the type-levers. Thus the finger-keys are located between the fulcrum, near the operator, and the letter-forming devices. The type-levers of the claim are not described in it by terms as of any particular form or class; but a type-lever of a peculiar form is made the subject of a specific claim in the first claim of the patent. Unless the claim is limited, however, to one in which the peculiar type-lever of the first claim is an element, the invention specified in the seventh claim is broader than the real invention of the patentee. The patents to Morgan, No. 173,658, and to Miller, No. 168,044, show—one in a type-writer, and the other in a type-setter—key-levers of the third order combined with type-levers or letter-forming devices with finger-keys upon the key-levers located between the fulcrum and the point of attachment to the type-levers. Type-writers with key-levers of the second order, having finger-keys, and combined with type-levers of various descriptions, were old at the time of the patentee's invention. What the patentee did that was new was to combine the key-levers of the third order, provided with finger-keys located between the fulcrum and the type-levers, such as are shown in the patents of Miller and of Morgan, with the peculiar type-levers of the first claim of his patent. Otherwise all that he did was to combine the key-levers of one class of type-writers with the type-levers of another class, without imparting any new function to either of the parts separately, or accomplishing any new result by their conjoint action. The proofs show very satisfactorily that when key-levers like those of the patent are substituted in the Remington machine for the key-levers of the second order employed in that machine no improved result is effected. The Remington machine is fully as efficient and as convenient in use as is the machine of the patent.

If the scope of the seventh claim is limited, as it must be, to the boundaries of the patentee's invention, the defendant does not infringe, as his type-levers are not the type-levers of the claim; and, in view of the prior state of the art, there is no room to apply the doctrine of equivalents.

The bill is dismissed, with costs.