# ARON *v.* MANHATTAN RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 43. Argued October 28, 29, 1889. — Decided November 11, 1889.

The first five claims of letters patent No. 288,494, granted to Joseph Aron, as assignee of William W. Rosenfield, the inventor, November 13, 1883, for an "improvement in railway car gates," are invalid, because what Rosenfield did did not require invention.

The same devices employed by him existed in earlier patents; all that he did was to adapt them to the special purpose to which he contemplated their application, by making modifications which did not require inven-

tion, but only the exercise of ordinary mechanical skill; and his right to a patent must rest upon the novelty of the means he contrived to carry his idea into practical application.

IN EQUITY. Decree dismissing the bill. Plaintiff appealed. The case is stated in the opinion of the court.

*Mr. M. B. Philipp* for appellant.

*Mr. Edwin H. Brown* for appellee. *Mr. Julien T. Davies* was with him on the brief.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought by Joseph Aron against the Manhattan Railway Company, in the Circuit Court of the United States for the Southern District of New York, to recover for the infringement of letters patent No. 288,494, granted to the plaintiff, as the assignee of William W. Rosenfield, the inventor, November 13, 1883, for an "improvement in railway car gates," the application for the patent having been filed April 3, 1883. The Circuit Court, held by Judge Wallace, dismissed the bill, and the plaintiff has appealed.

The specification of the patent says: "In many classes of railway cars, and particularly those used upon the elevated and other city railways, it has been found necessary, in order to prevent passengers from falling from the train, and also to prevent persons from attempting to get off or on a car while in motion, to provide the entrances to the car-platforms with gates, by which they can be closed except at the proper times. These gates are usually in charge of a guard or attendant, whose duty it is to close the gates before the train commences to move, and to open them only after the train has come to a full stop. As there is usually but one guard or attendant stationed between each two adjoining cars, it follows that to open or close both gates he must pass around from one to the other of the adjoining platforms. This passing from one platform to the other, besides being a source of annoyance to the guard, occasions some delay, which is very annoying to the passengers, particu-

larly at times when a large number are required to get off or on a car in a very short time. It is the object of the present invention, among other things, to provide means by which the guard or attendant can, without changing his position, open or close both gates simultaneously and with the least possible delay. To that end one feature of the invention consists in providing the gates with connections so arranged that any two adjoining gates can be simultaneously opened or closed by the guard while standing in the passage-way leading from one of the cars to the other."

The drawings annexed to the patent represent two ordinary railway cars, with platforms adjoining each other, and the usual entrances from the station platform, and gates of the ordinary construction for closing such entrances. The gates are hinged in the usual manner to posts which rise from the corners of the platforms, and close against the usual jambs which project from the sides of the cars. The platforms are provided with the usual guard-railings, extending inward from the above-mentioned posts to similar posts which are located a sufficient distance apart to leave a passage-way from one car to the other. When the gates are thus arranged, it is necessary, in order to close or open both gates, for the guard to pass from one platform around the inner post to the opposite platform, thus causing some delay in opening and closing one of the gates, adding to the labor of the guard, and causing annoyance to the passengers. In order to avoid this, each of the gates is provided, at a suitable distance from its hinge, with a curved lever, which extends rearward and terminates a short distance outside of the guard-railing. This lever is connected by a link, $e$, with a rod, $f$, which slides in or on a suitable bearing secured to the guard-railing, and is provided at its inner end with a handle by which it can be operated. The guard or attendant, while standing in the passage-way, can, by grasping the two handles and pushing or pulling the rods, $f$, open or close both gates simultaneously and without loss of time.

The specification states that the rods, $f$, will preferably be provided with some form of locking mechanism by which the

gates can be fastened in their opened or closed positions; and that such locking may be accomplished by having the handles pivoted to the rods, *f*, as shown, and provided with extensions which can be turned so as to extend in front of the inner posts, and hold the gates closed, or so as to lie in the rear of lugs and hold the gates open. It then describes an arrangement whereby the rods, *f*, and links, *e*, may be placed upon the inside of the guard-railings, as well as upon the outside; and also an arrangement by which the connections for operating the gates may, if desired, be placed beneath the platforms; and also an arrangement whereby the gates may be so hinged as to lie against the body of the car when open, instead of against the guard-railings; and also an arrangement whereby sliding gates may be used, instead of swinging gates.

There are six claims in the patent, only the first five of which are involved in the present case. They are as follows:

"1. The combination, with a gate arranged to close the side entrance to a car-platform, of an operating-handle located at or near the inner end of the platform guard-rail, and means connecting said gate and handle, whereby the attendant may open and close the gate while standing at the end of said guard-rail, substantially as described.

"2. The combination, with gates arranged to close the side entrances to the adjoining platforms of two cars, of operating-handles located at or near the inner ends of the platform guard-rails, and means connecting said gates and handles, whereby the attendant may open or close both gates simultaneously while standing at the ends of said guard-rails, substantially as described.

"3. The combination, with a railway car and its platform, having an end guard-rail, by which a side entrance thereto is provided, of a gate for closing said entrance, a rod, as *f*, sliding in or on guides secured to said guard-rail, and a link, as *e*, connected to said gate and rod, all substantially as described.

"4. The combination, with a railway car and its platform, having an end guard-rail, by which a side entrance thereto is provided, of a swinging gate for closing said entrance, a rod, as *f*, sliding in or on a guide secured to said rail, a link, as *e*,

connected to said gate and rod, and means for locking said gate in its closed position, all substantially as described.

" 5. The combination, with gates arranged to close the side entrances to the adjoining platforms of two cars, of rods, as *f*, sliding in or on guides secured to the guard-rails of said platforms, and links, as *e*, connected to said gates and rods, substantially as described."

The opinion of Judge Wallace is reported in 26 Fed. Rep. 314. The only question he considered was that of the patentable novelty of the improvement, saying :

" A brief reference to the prior state of the art will indicate that the combinations referred to in the several claims are merely an application to a new situation of old devices which had been previously applied to analogous uses. Devices to open and close an aperture at a distance from the operator, in a great variety of forms, were old. As illustrations of those things which are matters of common knowledge and of which the court will take judicial notice, it is sufficient to allude to the strap used by the driver at the front of the omnibus to open and close the rear door; to the devices for opening or closing valves at a distance, in steam and hydraulic apparatus; and to the devices used at railway switches for opening and closing the rails.

" Referring to the prior state of the art, as shown by various prior patents which have been introduced in evidence, it appears also that mechanism to open and close the entrance to passenger cars at a point distant from the operator was likewise old ; as, where the operator standing upon the front platform employed such mechanism to open or close a door at the rear platform. One prior patent alone, the one granted to John Stephenson September 15, 1874, shows five methods of closing and opening the rear doors of street cars from the front platform.

" Mechanism for closing and opening apertures at a distance from the operator, in which the same devices were employed as are employed by the patentee, was old, and is disclosed in a number of earlier patents, which have been put in evidence. It will suffice to refer to two only. The patent to Wollen-

sak of March 11, 1873, for an improvement in transom-lifters, describes the means for opening and closing the transom as consisting of a sliding rod, which is connected by a pivoted link to the arm of the transom frame. The patent to Corrigan, granted April 16, 1878, for an improvement in blind-adjusters, whereby outside blinds are opened and closed without lifting the window-sash, describes as the mechanism employed a sliding bar connected by a pivoted link with a hinged shutter. In both of these patents the aperture to be opened and closed at a distance from the operator — in the one case a shutter and in the other a transom — is opened and closed, as is the case in the patent in suit, by pushing or pulling the sliding rod or bar. In both of these patents there is likewise described a locking device, by means of which the sliding rod or bar is retained in a fixed position, so that the shutter or the transom will remain fastened when opened or closed, at the option of the operator; thus showing opening, closing and locking apparatus in all essentials like that of the patent in suit. Moreover, the patent to Corrigan shows this apparatus arranged to open and close the two shutters of the window, at the option of the operator, simultaneously, the sliding bars being so arranged as to be pushed or pulled each by one hand of the operator.

"Mechanism for opening and closing apertures distant from the operator, in which the devices used for the purpose are the mechanical equivalents of those employed by the patentee, is shown to be old by a large number of patents which have been put in evidence.

"This partial exhibit of the prior state of the art demonstrates that what the patentee did was to adapt well-known devices to the special purpose to which he contemplated their application. It was necessary that the gate should swing inward to open and outward to close; that the sliding rod should be located where it would be out of the way of passengers entering or leaving the platform; and that the end or handle of the rod should be located where it could be conveniently operated by the attendant, without inconveniencing outgoing or incoming passengers. The new situation required

adequate modifications of existing devices for opening and closing an aperture at a distance from the operator, appropriate to the new occasion. Accordingly, the patentee located the rods on bearings secured to the guard-rails, with their handles near the passage-way formed by the space or opening near the middle of the guard-rail. If this required invention, his improvement was the proper subject of a patent. He did nothing more and nothing less than this. It seems impossible to doubt that any competent mechanic familiar with devices well known in the state of the art, could have done this readily and successfully, upon the mere suggestion of the purpose which it was desirable to effect. When it was done as to one car-platform, it was only requisite to duplicate it upon another to make the improvement of the patentee in all its length and breadth.

"The patentee is entitled to the merit of being the first to conceive of the convenience and utility of a gate opening and closing mechanism which could be operated efficiently by an attendant in the new situation. His right to a patent, however, must rest upon the novelty of the means he contrives to carry his idea into practical application. It rarely happens that old instrumentalities are so perfectly adapted for a use for which they were not originally intended as not to require any alteration or modification. If these changes involve only the exercise of ordinary mechanical skill, they do not sanction the patent; and, in most of the adjudged cases where it has been held that the application of old devices to a new use was not patentable, there were changes of form, proportion, or organization of this character which were necessary to accommodate them to the new occasion. The present case falls within this category."

*We concur in these views, and affirm the decree of the Circuit Court.*