## STAUFFER v. SPANGLER et al.[1]

*(Circuit Court, E. D. Pennsylvania. January 29, 1892.)*

1. PATENTS FOR INVENTIONS—NOVELTY—PRIOR STATE OF THE ART.
   The first two claims of letters patent 345,186, for apparatus for treating un-baked bretzels, containing as elements the generator, the perforated pipe leading from near the bottom of the generator, a perforated spray-pipe, and a casing lo-·' cated over the carrier, all of which elements, each operating in the same way and for analogous purposes, being shown in prior patents, and no new or better results being obtained, do not cover patentable novelty.

2. SAME—EXTENT OF CLAIM—INFRINGEMENT.
   The natural construction of the third claim of letters patent No. 345,186, which contained the phrase, "spraying and salting devices," and the fact that the speci-fication described the machine as having a spraying pipe and a perforated drum, by which salt was sprinkled over the dough being trea* ed, will cause to be included in this claim, as elements, both the drum and the spray-pipe, although an ambigu-ous correspondence between the patent-office and inventor, and the fact that the solution discharged by the spray-pipe was alkaline, be urged in favor of construc-tion of claim, including only the spraying device; and defendant, not employing the salting drum, does not infringe.

Bill in equity by David F. Stauffer against Harrison Spangler, H Samuel Spangler, George H. Smith, and W. H. Soader to restrain in-fringement of letters patent 345,186, issued to complainant July 6, 1886, for apparatus for treating unbaked bretzels. Bill dismissed, claims 1 and 2 declared invalid, claim 3 restricted and declared not infringed.

*Jos. C. Fraley,* for complainant.

*Strawbridge & Taylor,* for respondents.

ACHESON, Circuit Judge. The bill charges the defendants with the infringement of letters patent No. 345,186, granted July 6, 1886, to the plaintiff, David F. Stauffer, for improvements in apparatus for treating unbaked bretzels and crackers and other similar articles formed of dough for baking, "so as to more conveniently give them the glazed and salted surfaces characteristic of such articles when baked." The specification states that theretofore the dough, when formed into proper shape, "has been dipped in a suitable solution, and the salt afterwards sprinkled over the same by hand, which is a slow and tedious operation, involving the loss, in addition, of considerable material, which is scattered and wasted." · The declared object of the invention is "to provide an apparatus by which these operations may be conveniently and thoroughly effected with com-paratively little loss of material, and in a much more thorough and ex-

---

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

peditious manner than heretofore." The apparatus shown by the illustrative drawing and described in the specification consists of a trough, above which moves an endless carrier or apron, which conveys a reticulated shaft, upon which the articles to be treated are placed; "a small boiler or vapor generator," in which there is a steam-coil for heating the solution; a pipe, with side perforations in the lower part, where it is within the generator, and extending from near the bottom of the generator through the top and up to a perforated spray-pipe above the carrier; at the other end of the trough, and above the carrier, a hollow perforated drum, mounted so as to rotate, and to be "charged with salt, to be sprinkled upon the articles;" and a pipe to conduct the superfluous liquid from the trough down to a collecting vessel or tank, which communicates with a pump, whereby the contents can be pumped into the generator. The specification thus describes the operation:

"The boiler or generator is nearly filled with the solution, and steam, being let into the coil at high pressure, raises the liquid to the boiling point. The boiling solution and its steam together pass through the perforations in the sides of the pipe, and thence to the spray-pipe, where both are discharged upon the pans of bretzels traveling beneath them at the proper rate of speed upon the belt. The effect of this spray of salt solution and steam is to 'boil' the bretzels, precisely as in the old method, where they were dipped in a boiling pot; and by the time they have passed from beneath the sprays the necessary glaze and color has been given to them. As they travel along upon the belt they drain through the open wire pan, the surplus solution falling into the trough beneath, whence it is conducted to the tank, and, while still hot, pumped back into the generator, to repeat the operation."

The claims are as follows:

"(1) The combination, with the generator, of the perforated pipe, leading from near the bottom of the generator, and connecting with a perforated spray-pipe above the carrier, whereby the alkaline solution is forced out of the generator and sprayed over the articles, substantially as specified. (2) The combination, with the generator and perforated pipe, of the spray-pipe and casing, located over the carrier, substantially as specified. (3) The combination, with the generator and the spraying and salting devices, of the collecting trough, whereby the salt solution is collected, and the tank and pump with the pipes for conveying the salt solution back to the generator, substantially as specified."

The solution commonly employed in treating bretzels and similar articles for the purposes contemplated by the patent, is an alkaline solution, composed of water and potash or lye, and is hot when used. This treatment was old at the date of Stauffer's alleged invention, the articles being dipped (as stated in his specification) in the heated solution; and the most that can be said of the plaintiff's method of applying solution is that thereby the work is more rapidly done.

Now, taking up the first and second claims of the patent in suit, we clearly perceive that the several devices or parts entering into the combinations therein set forth were all old, and that in the plaintiff's apparatus each part operates in its old way. In Etzenberger's United States patent of April 1, 1879, for an improvement in apparatus for making infusions, we find a generator having therein a steam-coil to heat the

liquid in the generator, precisely as in Stauffer's apparatus, together with a perforated pipe extending from near the bottom of the generator through its top, and thence upwardly, for the purpose of delivering the liquid to a device above, which is effected by steam pressure when steam is raised in the generator by heat from the steam-coil. Again, Mitchell's United States patent of September 8, 1874, shows a machine for steaming cakes and crackers, having an endless apron, upon which the articles are placed, and by which they are carried past the steam-ejecting nozzles, whereby a stream of moist steam is thrown upon them; the device having a steam-supply pipe, and also a water-supply pipe to moisten the steam with "aqueous spray or vapor." Then the patent of Oberle and Janggen, of July 10, 1883, discloses an apparatus for steaming jumbles, crackers, etc., before baking, consisting of a casing, within which are spray-pipes with fine perforations for emitting steam, an endless apron with a moving mechanism and means for regulating the speed; the articles to be treated being placed upon the apron, and thereby carried under the steam spray-pipes. Such being the known state of the art, the idea of subjecting bretzels to the bath of hot alkaline solution by the use of mechanical appliances analogous to those employed in steaming crackers and like articles, required for its accomplishment nothing more than the exercise of ordinary mechanical skill. It is to be borne in mind, too, that no new result was thereby secured, nor, indeed, any better result than is effected by dipping the articles in the heated solution. The conclusion that Stauffer's first and second claims do not disclose anything of patentable novelty is in line with the rulings in *Hollister* v. *Manufacturing Co.*, 113 U. S. 59, 5 Sup. Ct. Rep. 717; *Aron* v. *Railroad Co.*, 132 U. S. 84, 10 Sup. Ct. Rep. 24; *Burt* v. *Evory*, 133 U. S. 349, 10 Sup. Ct. Rep. 394; and many other like adjudications.

As respects the third claim of Stauffer's patent, it is only necessary to say that, as the defendants' machine does not contain the perforated drum or any equivalent salting device, the salt being sprinkled by hand upon the articles after they leave the machine, there is no infringement of that claim. The plaintiff's counsel, indeed, has made an ingenious but unconvincing argument to show that the third claim does not include the perforated drum, or any equivalent therefor; but that the phrase "spraying and salting devices" refers altogether to the one device for spraying the alkaline solution. The basis for this argument is that the file wrapper shows that the office rejected a claim which had as elements the spray-pipe and the perforated drum as a mere aggregation. But this argument loses any force it might otherwise have when we come to note that the collecting trough, by which these two devices were connected, was omitted from the rejected claim. The construction upon which the plaintiff here insists is a forced one, contrary to the specification throughout, and against the words and plain meaning of the claim. The sprinkling of salt over the bretzels by a distinct operation, after they have been treated with the alkaline solution, is a prominent feature of the invention; and the mechanical device for so salting the articles is fully explained in the specification, and shown by the drawings. By the described operation the

articles are first brought "under the spraying device," and, after being sprayed by the solution, are then brought "under the perforated drum," to be salted.   To hold, then, that the words "spraying and salting devices" mean the "spraying device" alone, to the exclusion of the salting device, would be to violate every recognized canon of construction applicable to the subject.   The foregoing views being decisive of the case, I do not deem it necessary to consider other matters of defense which counsel, have discussed.   Let a decree be drawn dismissing the bill, with costs.