# IN RE APPLICATION OF BRIGGS.

PATENTS; REISSUE.

A decision of the Commissioner of Patents, refusing an application for the reissue of letters patent for an ice-planing machine, on the ground that it did not show invention, *affirmed.*

No. 52. Patent Appeals. Submitted November 10, 1896. Decided December 1, 1896.

HEARING on an appeal from a decision of the Commissioner of Patents refusing an application for the reissue of letters patent for an ice-planing machine. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Pollock & Mauro* and *Mr. Benjamin F. Lee* for appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal by John N. Briggs from a decision of the Commissioner of Patents refusing an application for the reissue of a patent for an ice-planing machine.

The application contained several claims, of which the following only is in controversy.

" 3. The combination, with the cutter-head and the racks directly attached thereto, of the guides for both cutter-head and the racks, arranged perpendicularly to the plane of the elevator, the pinions mounted on said guides and engaging in said racks, and the levers or arms for operating said pinions, a cutter consisting of a number of points entering the ice in such a manner as not only to cut but to groove it at one operation and an ice-elevator adapted to positively force the ascending cakes of ice into contact with the cutter and groover, all constructed substantially as described, so that

the depth of the cut may be directly and positively regulated by means of the levers and the ice at the same time properly grooved for storage."

It appears from the record that original patent No. 367,267 had been issued to said Briggs on July 27, 1887, one of the claims of which reads as follows:

"1. The combination, with the cutter-head and the racks directly attached thereto, of the guides for both cutter-head and the racks, arranged perpendicularly to the plane of the elevator, the pinions mounted on said guides and engaging in said racks, and the levers or arms for operating said pinions, all constructed substantially as described, so that the depth of the cut may be directly and positively regulated by means of the levers, as herein specified."

It further appears that on February 19, 1890, he obtained a reissue, No. 11,060, wherein the cutter shown in the claim under consideration is specifically described in combination with the inclined railway and endless chain of an ordinary ice-elevator.

Considering that the separate elements of the combination claimed were shown in the prior patents of the applicant himself and in those for wood and ice-planing machines of Butterfield, Loring and Giles, Smith, and others, the Commissioner was of the opinion that it did not show invention. His decision was founded in main on the view taken by him of the effect of the decision of the Circuit Court of Appeals for the Second Circuit in the case of *Briggs* v. *Central Ice Co.*, 60 Fed. Rep. 87. That decision was made in a suit brought by said Briggs against the ice company for an infringement of his patent, No. 367,267, aforesaid, and hence it is true, as claimed by the appellant, involved directly only the claim in that patent, hereinabove set forth, and which the court held to be destitute of patentable novelty. In arriving at this conclusion Judge Wallace, who delivered the opinion of the court, after describing the older devices for planing

ice that had been patented to Chaplin, Loring and Giles, and Smith, said :

" The adjusting devices of the first two of these prior patents do the same work in substantially the same way, as the adjusting devices of the patent in suit. In the Loring and Giles apparatus they work automatically, and are designed to cut a definite depth into each cake of ice. In operation, the cakes of ice raise the cutter-head, and after the planer has done its work the cutter-head falls by gravity to its normal position. In the Smith apparatus the range of adjustment of the devices is not as great as in the patent in suit. In the apparatus of Chaplin they are not controlled so positively as in that of the patent in. suit. It cannot be disputed, and, indeed, it is obvious, that the adjusting devices of the patent are preferable to those described in any of these prior patents. They enable the operator to do his work of planing the ice with more certainty, ease, and speed. Because this is so, we reach the conclusion that the claim is invalid with reluctance. But the patentee was not the first to use the adjusting devices of the claim for the purpose of enabling a planing tool to do its work. Precisely the same combination, found in the complainant's patent, of cutter-head, guides, racks, pinions, and levers, is described in a Patent for a planing-machine granted May 17, 1859, to T. B. Butterfield. In this machine, which is a wood-planer, there is a feed-roller, located in the cutter-head above the planing-tool, which is designed to bear against the shaving and assist in moving the piece of wood through the machine. It is obvious that this device would be unnecessary in an ice-planing machine. It could be omitted without the slightest readjustment of the other parts. If retained, it would not affect their mode of co-operation. If omitted in the Butterfield machine, its absence would not affect in the least the co-operation of the parts for the adjustment of the planing-tool. All the advantages ascribable to the patented combination are due to the assembling together of an old

elevator and an old cutter-adjusting mechanism. This could be effected without requiring any modification of the parts which was not an obvious one, and within the ordinary skill of the mechanic. In contemplation of law, the patentee merely transported the devices of Butterfield into the old elevator, and cut away the useless feed-roller. When thus assembled together, the elevating mechanism performs no new functions, and the adjusting cutter mechanism performs precisely the functions it did in the Butterfield machine. It is wholly immaterial that the adjusting devices of Butterfield were designed to be used in a machine for planing wood. The application of an old organism to an analogous use is not patentable. *Blake* v. *City and County of San Francisco,* 113 U. S. 679 ; 5 Sup. Ct. 692 ; *Pennsylvania R. Co.* v. *Locomotive Engine Safety Truck Co.,* 110 U. S. 490 ; 4 Sup. Ct. 220 ; *Steiner Fire Extinguisher Co.* v. *City of Adrian,* 59 Fed. Rep. 132. It is not invention to use an old combination of devices in a new location to perform the same operations, when no changes or modifications are required to adapt it to the new use, or when only such are required as can be made by the exercise of ordinary mechanical skill. The case of *Aron* v. *Railway Co.,* 132 U. S. 84 ; 10 Sup. Ct. 24, is an opposite illustration of the rule."

Although the ice elevator was not set out in the combination claimed in the patent in controversy, its coincidence was so obvious that it was read into it by the court.

" Assuming (said Judge Wallace) that the ice elevator, although not specifically mentioned, ought to be regarded as an element of the claim, and recognizing the fact, as we must upon the proofs, that the other devices of the claim were never before assembled together in an ice elevator, nevertheless, we are of the opinion that the claim is destitute of patentable novelty."

Nor does the addition to the present claim (not noticed in that opinion) of " a cutter consisting of a number of points entering the ice in such manner as not only to cut, but to

groove it at one operation," add anything new to the combination, for, as we have seen, that cutter was specifically described in reissued patent No. 11,060, and, besides, was shown in the specifications and drawings of No. 367,267. Notwithstanding, therefore, the able and ingenious arguments made on behalf of the appellant, we must say that we think the Commissioner was right in the conclusion that the whole combination had been substantially passed upon by the Circuit Court of Appeals.

Appellant seeks, however, to avoid the effect of that decision on the ground that it must necessarily have been different had the case of *Potts* v. *Creager*, 155 U. S. 597, then been decided. Here again we agree with the Commissioner in the view taken and expressed by him of that decision also. We had occasion in a recent case that closed a long and ably-conducted litigation to determine the patentability of a combination, wherein the cases of *Webster Loom Co.* v. *Higgins*, 105 U. S. 580, and *Potts* v. *Creager* were both carefully considered in their application to a claim of a new combination of old devices in a useful system of house-drainage which we think came much nearer to the exercise of the inventive faculty than does the claim in this case, and we do not think it necessary to add anything to what was there said. *Durham* v. *Seymour*, 6 App. D. C. 78, 103, 105. Attention was also called in that case to a familiar rule directly applicable to the merits of this case, as follows: " In this connection must be borne in mind, too, the latitude of construction given to new invention and the strict and narrow construction invariably applied in a case where the claims are for the same general subject-matter, and especially where the same person is applying for a second patent."

Without prolonging the discussion, we find that there is no error in the decision appealed from, and must, therefore, affirm it and direct that the proceedings and decision of this

court be certified to the Commissioner of Patents, as provided by law, and it is so ordered. *Affirmed.*

Mr. Chief Justice ALVEY did not sit on the hearing of this case, his place being taken by Mr. Justice BRADLEY, of the Supreme Court of the District of Columbia.——REPORTER.