## LINCOLN IRON WORKS et al. v. W. H. McWHIRTER CO.

(Circuit Court of Appeals, Second Circuit. December 5, 1905.)

### No. 8.

1. PATENTS—VALIDITY—PRIOR INVENTION.
    It is not enough to defeat a patent that some one other than the patentee had conceived the invention before he did, or had even perfected it, so long as it had not been in public use, or described in some patent or publication, if the patentee was an original and independent inventor.
    [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 66, 74.]

2. SAME.
    A patent for a machine is not invalid because of the fact that the patentee obtained the general conception of the machine from another, but without disclosure of any means for carrying the same into effect, which means the patentee himself devised, and which constituted the only invention described and claimed in the patent.

3. SAME—NOVELTY—STONE PLANING MACHINE.
    The Gilmour patent, No. 575,154, for a stone planing machine having two tables which may be operated separately or locked together and operated as one, as to claims 1, 2, and 3, is void for lack of patentable novelty; all of the parts of the machine being old singly and in combination, except the means for locking the two tables together, which were also known in the prior mechanical art and were merely applied by the patentee to a machine in which they had not before been used.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

For·opinion below, see 131 Fed. 860.

Harry C. Knight, for appellants.
E. B. Stacking, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The judge of the court below in dismissing the complainants' bill, while expressing the opinion that claims 1, 2, and 3 of the complainants' patent (granted to Gilmour January 12, 1897, for planer for dressing stone), were valid in respect to patentable novelty, and that claims 1 and 2 had been infringed by the defendant, while claim 3 had not been infringed, was of the opinion that Gilmour was not the inventor of the subject-matter. The assignments of error challenge the correctness of the decision in all the particulars in which it · was adverse to the complainants. The decree of the court did not specifically adjudge the validity of the claims or that either of them had been infringed by the defendant, but merely ordered a dismissal of the bill without assigning the grounds. This being the character of the decree it was competent for the appellee to defend it upon any

grounds which were warranted by the pleadings and proofs, and accordingly it has been contended for the appellee that the claims were void for want of patentable novelty, and also that, giving them the narrow construction which should be put upon them, they have not been infringed by the defendant.

It is not enough to defeat the patent that some one other than Gilmour had conceived the invention before he did, or had even perfected it, so long as it had not been in public use or described in some patent or publication. If Gilmour was an original inventor, though a subsequent one, it was his right to obtain a patent unless he "surreptitiously and unjustly obtained the patent for that which was invented by another who was using reasonable diligence in adapting and perfecting the same." The answer sets up such a defense. The court below in its opinion did not find that this defense had been established, unless such a conclusion is to be implied from the finding that Gilmour was not the inventor.

The patent to Gilmour is for a duplex stone planing machine which, except in one particular, was old in the prior art, and had been described in the English patent to Fletcher and Fuller of December 19, 1861. In Knight's Mechanical Dictionary published in 1882 there is a description of the old machine which is sufficient for present purposes. It is there described as:

"Arranged with double beds and double tables, each table having a separate set of gearing, with starting, stopping, and feed motion. There are two tool boxes on the cross slide, each of which is independently self-acting so as to work with its own table; thus the two tables may be used separately as two smaller machines working independently of each other, and capable of planing different lengths of work at the same time; or, when planing a larger article, the two tables, gearing and motion, may be coupled so as to form one large machine—an arrangement rendering the machine capable of doing a variety of work."

This description is equivocal in one respect, the two tables in the Fletcher and Fuller patent not being coupled directly to one another, but indirectly by coupling the two machines through the feed movement shafts. In the duplex planer of the patent in suit the two machines are coupled not only through the feed mechanism, but also through the direct interlocking together of the two tables or platens, which are referred to in the claims as "sections." The interlocking of these tables is the real invention described and claimed in the patent. Its advantages are stated by the expert for the complainant to be:

"That such lost motion as must occur in the feed mechanism, as well as the unequal wear of the parts, would prevent the accomplishment of accurate work with the two platen sections used together as one unless they were effectually locked together otherwise than through the medium of the feed mechanism, so as to secure them rigidly and absolutely against longitudinal movement."

The proofs show that in the spring of 1895 Gilbert C. Brown had conceived the feasibility of constructing a stone planing machine which could be used as a double or as a single machine, and in an interview with Gilmour asked him his opinion, showing him a rough sketch in pencil made at the time representing such a machine. When

asked whether he represented in the sketch any means for coupling the tables, or the driving mechanism for the tables, he stated that he did not think he went into any details at all. About that time Brown consulted with Thomson, who was in his employ, and asked him if he could make a drawing of a machine with two tables to work independently, or connected together to form one table. Thomson made a sketch of such a machine showing the principle, but not the details, and upon showing Mr. Brown this sketch he asked Thomson how he was intending to connect the tables, and Thomson told him he proposed to do so by means of a pin and bolt. Subsequently, after various consultations between them, Thomson made detailed drawings and commenced to build the machine. In March, 1896, Brown filed in the Patent Office his application for a patent. Gilmour, having obtained the conception of a double planer from Brown, employed Young, a mechanical engineer and draftsman, to make drawings carrying out the general features of his patented machine, among others that of fastening the platens together. These drawings were prepared by Young, and in February, 1896, Gilmour filed his application for the patent in suit. It appears clearly enough that Gilmour intended secretly to avail himself of Brown's general conception of a duplex planer and anticipate him in applying for a patent therefor. There is however no evidence in the record which indicates that Gilmour obtained the conception of fastening the two tables together from Brown, and, so far as does appear, he was an independent originator of that arrangement. The only testimony concerning the particulars of the disclosure made by Brown to Gilmour is that given by Brown himself as a witness for the defendant. As the means for embodying this arrangement in the machine are the essence of the invention described in the patent, and all that was new in the existing state of the art, we are of the opinion that the defense interposed was not proven. Brown did not communicate anything new or patentable to Gilmour. He only communicated that which was accessible to all who might have chosen to familiarize themselves with the prior art.

It remains to consider whether the claims in controversy are void for want of patentable novelty. As has been said all the parts enumerated in them were old, singly and in combination, except the means for locking the two tables together. These means consist of a double dove-tailed tapering wedge (called a key) together with notches located in the adjacent edges of the sections or tables, an equal distance from the ends of each, and so that when the sections are side by side with their ends in line the notches will coincide. These notches when side by side constitute a recess which corresponds in form with the wedge. By inserting the wedge in this recess the tables are locked and held together in alignment and constitute practically a unit. The patent to Little, of February 14, 1893, describes and illustrates these exact means for connecting together at their edges two plates or pieces of metal, wood or other material, when it is desired to unite them as practically a single plate. It is obvious also that it was within the ordinary skill of the calling for an intelli-

gent mechanic to devise means for locking the tables rigidly together, such for instance as the bolts which Thomson employed for that purpose when working out the details for Brown. This is apparent from the fact that Brown and Gilmour each left this to the judgment of the workman or the draftsman whom he employed. In view of the Little patent alone it did not involve invention to supply the means. They were at hand in the prior art, perfectly adapted to the purpose for which Gilmour used them. As was said in Mast, Foos & Co. v. Stover Manufacturing Co., 177 U. S., 493, 20 Sup. Ct. 708, 44 L. Ed. 856:

"He invented no new device; he used it for no new purpose; he applied it to no new machine. All he did was to apply it to a new purpose in a machine where it had not before been used for that purpose."

Upon the authority of that decision and of other decisions, of which Aron v. Manhattan R. Co., 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272, is an example, we are constrained to hold the claims void, for want of patentable novelty.

The decree is affirmed, with costs.