THOMSON–HOUSTON ELECTRIC CO. v. GARRETT COAL CO.

(Circuit Court, W. D. Pennsylvania. April 5, 1906.)

No. 1.

PATENTS—INFRINGEMENT—ELECTRIC MOTOR REGULATORS.

The Knight reissued patent, No. 11,918 (original No. 428,169), for an electric motor regulator consisting of an interlocking device for use on that class of electric motors, in which different levers are used for controlling and reversing the current by which each lever is locked by the other, except when the other is in a predetermined position, is limited by the narrower claims, the reissue to the specific mechanical means shown, or their equivalents. As so construed, *held* not infringed.

In Equity.

Betts, Sheffield & Betts, for complainant.
Glen Smith Noble, for respondent.

BUFFINGTON, District Judge. This is a bill in equity brought against the Garrett Coal Company by the Thomson-Houston Electric Company, the assignee of reissued letters patent No. 11,918 for an electric motor regulator issued to Walter H. Knight and dated July 2, 1901. The bill charges all claims of such patent are infringed in an electric motor engine used by respondent. The bill is defended by the Morgan-Gardner Electric Company, the makers of the engine, on the ground of the invalidity of the patent and noninfringement thereof.

The device of the patent is a controlling mechanism for electric motors. In motor car operation, current volume is controlled by one lever, and reversed by another. If the reversal lever is used when the current is turned on, or if the current is turned on during the reversal process, destructive effects are likely to follow. The device in question overcame these difficulties by a mechanism such that, when current was on, the reversing lever was locked, and, when current was turned off, and the reversal lever was being used, the current lever was locked. The proofs show that Knight was the first one to apply an interlocking system to two separate levers of an electric car system, but the interlocking of two sets of levers to control switches and signals respectively was well known in railroad practice. It will thus be seen that Knight's invention did not consist in any change or modification of the current control or the reversal system per se of an electric motor, but in the application to those two elements of an interlocking mechanism whereby each, while in operation, locked the other. His mechanism to do this was as follows: In the outer edge of a circular disk attached to the current lever, Knight made certain notches, adapted by means of a spring-actuated brake, to loosely hold the lever in positions of varying current supply from zero to maximum. The deepest notch was zero, when no current was on. On the upper side of this disk and back from its outer rim he attached a raised circumferential flange or rib, provided with an opening a quadrant distant from the deepest notch. Just above this disk a fixed lug reached from the frame, in which the lever turned and at right angles to the line where the deep

notch engaged with the brake. The effect of this was that, when no current was on and the deep notch was engaged by the brake, the opening in the disk flange was directly under the fixed lug. By a pivot placed on the under side of such lug and concentric with the flange, Knight attached an equilateral triangular swinging block provided with a downwardly projecting pin at the lower side of each of two corners. These pins were so spaced that, when the block was swung to make them concentric with the flange, they abutted the two sides of the flange opening, and, so long as they remained in this position, they locked the current lever. When, however, the triangular lock-block was swung in either direction, the two pins swung respectively within or without the orbit of the flange, and permitted free movement of the current lever. At the same time, it will be noted that, so long as any current was on, and the deep notch of the disk was not engaged with the brake, the flange-wall prevented the lock-block from swinging out of its then position. On the stem of his reversing lever, Knight put a fixed lug, to which he pivoted one end of a rod, the other end of which he pivoted to the third or outer corner of the triangular lock-block. The lug on the reverse lever was so placed that the lock-pin on the block came opposite the flange opening, only when the current control lever brought the deep notch in engagement with the brake and no current was on. Consequently the reverse lever could only be used when no current was turned on by the control lever, and, while the reverse lever was being used, no current could be turned on by the control lever.

Now, the neutrality thus imposed on these two hostile levers by the use of an interlocking system is, to our mind, a valuable and important advance in the art, and, were the case before us on the patent as it originally issued, there would be weighty reasons for urging us to construe it as of the broad, advance character attributed to it by Judge Shipman, in Thomson, etc., v. Lorain (C. C.) 103 Fed. 641. But the patent must now be construed with due regard to the steps taken in its reissue. The case referred to was reviewed by the Circuit Court of Appeals of the Second Circuit, in 107 Fed. 711, 46 C. C. A. 593, and all the claims except the fifth were adjudged invalid. It was there said:

"The patent is in no sense a pioneer patent. The invention added a new feature to those pre-existing motors in which the regulator and reverser were operated by different handles. The locking device was undoubtedly an improvement in that type of motor; but it was not an invention of such novelty and importance in motor apparatus as to make a distinct step in the progress of the art, as distinguished from a mere improvement or perfection of what had gone before. It did not involve any problem peculiar to electrical mechanism. It involved merely the mechanical connection of two levers, each actuating the well-known current-regulating device taken from the prior art, without modifications, and which were to be fastened together so that neither would move, except when the other was at a predetermined position. To co-ordinate the two levers in such a manner as thus to restrict the movement of either was old in lever mechanism, and it had been done by interlocking devices of various kinds. This is sufficiently shown by the evidence in the record of the prior art in the interlocking of levers for controlling railway switches and signals. * * * In view of the limitations imposed upon the claims by the prior state of the art, they

ought not to receive a construction which will enable them to cover a combination in which the several devices are not substantially those described in the patent. It will not do to say that, because the patentee was the first to introduce locking devices into a motor in which the regulator and reverser were operated by different levers, he is entitled to a monopoly of all locking devices in such a motor that will co-ordinate the movements of the two levers, so that neither will move, except when the other is at a predetermined position. Precisely that function had been previously performed by the locking devices used to co-ordinate levers, and, if the patentee had done no more than to introduce them into the levers of a motor, he would merely have made a change of location. He is entitled to the merit of being the first to conceive of the utility of interlocking the two levers of a motor controller of the type in which separate levers are employed, but his right to a patent must rest on the novelty of the means he has contrived to carry his ideas into practical application. Aron v. Railroad Company, 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272. The patent cannot be broader than the real invention, and that is measured by the novelty of the particular contrivances which constitute the locking mechanism."

The fifth claim, in which were the elements of "a flanged segment on a regulating lever," and "a pivoted block having stops engaging with the flange of the segment," was stated by the court as "appropriately framed to secure the patentee his real invention and cover the locking device described in the specification, including, of course, those which are substantially the same thing."

Now, in the reissue subsequently applied for, the element of a flange is embodied in every claim. There can be no question what was meant by the term flange. It is referred to in the specification and shown in the figures. Now, it is evident that, in view of the opinion which invalidated the original broad claims and compelled a reissue in which narrower claims were allowed, these latter claims cannot receive a construction which in practical effect would give them as broad scope as the original ones. True, the claims are entitled to a full measure of mechanical equivalents, but we must not broaden the doctrine of mechanical equivalents to cover every mechanical means. An analysis of the functional elements of the respondent's device satisfies us that they have found a way of interlocking the two levers, but by essentially different mechanical means than those disclosed by Knight. They have wholly eliminated the element of a flange, and so also the triangular lock-block, which features were the functional gist of Knight's device. Instead of a connecting rod, which serves no other purpose, respondent uses a pivoted, spring-actuated bar, which by the aid of a deep notch in the current-controlled disk and two notches in the reversing lever disk, seems to interlock both levers. There is no such corresponding member in Knight's device as this pivoted lock-bar, nor are either of the disks used for the same purpose as in respondent's. It is true there is a deep notch in Knight's current-controller disk, but its depth is a mere index of lever position. In respondent's device the deep notch is used not only as an index of lever position, but its depth has a functional effect, in that it draws the other end of the lock-bar clear of the controller lever disk, and so permits reversing when no current is on. So, also, the shallowness of the other notches, while serving as markers of relative current stages,

by their shallowness have a functional effect to depress the other end of the lock-bar, and thus lock and keep locked the reversing lever.

From these facts it will be seen: First, that the respondents do not employ all the elements of Knight's combination; and, secondly, that the individual elements they do employ co-operate in a wholly different way to interlock the two levers. Such being the fact, it follows infringement does not exist.

Let a decree dismissing the bill for noninfringement be drawn.