GUNN et al. v. BRIDGEPORT BRASS CO.

(Circuit Court of Appeals, Second Circuit. March 12, 1907.)

No. 243.

PATENTS—INVENTION—CARD RECORDS.

The Gunn patent, No. 583,227, for a system of card records, the improvement claimed being a carrying of the subdivision or classification one or more steps beyond what was possible with the records of the prior art, is void for lack of patentable invention, as merely a more minute subdivision by the larger use of division cards differentiated by means used in the prior art.

Appeal from the Circuit Court of the United States for the Southern District of New York.

The cause comes here by appeal from interlocutory decree of the United States Circuit Court for the Southern District of New York, sustaining validity of complainant's patent, No. 583,227, for improvements in card records, granted to complainant Gunn May 25, 1897, and adjudging infringement by defendant and ordering an injunction and an accounting.

See 148 Fed. 239.

Fred L. Chappell, for appellant.

Livingston Gifford, Oden Roberts, Gifford & Bull, and Roberts & Mitchell, for appellees.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. We are relieved from a discussion of the various claims urged in support of the patent in suit by the clear and unequivocal declarations of the patentee himself as to the underlying principle which characterizes his alleged invention, and which it is claimed differentiates it from the prior art. In his specification he says as follows:

"Prior to my invention it has been the custom to arrange cards in large numbers in a suitable drawer or receptacle and to divide them into divisions, each division containing a different record, or class of records, by inserting at desired intervals what are known as 'division-cards,' usually higher than the record cards, and which furnish a means of distinguishing the several divisions of cards and their records one from another for reference thereto. For many purposes, however, a subdivision or classification carried one or more steps beyond what is possible with the usual division cards is desirable—such, for instance, as subdividing one or more times the cards referred to. * * *

"My invention consists in a plurality of cards arranged behind each other and provided at their corresponding edges—for instance, along their tops—each with one or more distinguishing portions, in the nature of projections, depressions, or other distinguishing features or contours. * * *

"While I have thus far described the distinguishing portions as projections and as colors on the various cards, all the cards having the same distinguishing portions, being referred to in the claims as a 'group,' yet the distinguishing portions may equally well be depressions or otherwise. For instance, I have shown some of the cards in the record with their corners clipped at g, while others have not a corner so clipped, while in Fig. 4 the last card is shown as having a depression, h, removed from the end of the card, and by means of the depressions, h or g, arranged in proper manner either with or without the projections referred to, the possibilities may be greatly extended. From the foregoing brief explanation of a few of the uses to which my invention may be put the distinguishing features of the invention will be apparent, viz.: The providing of the several cards of a series with distinguishing portions either in the nature of projections or depressions differentially positioned on corresponding edges of different cards on which are entered different records or classes of records."

The prior art showed division cards with projections at their upper edges and with depressions and clipped corners and with distinguishing coloring features, all used for the purposes of classification, or, as the patentee says, "which furnish a means of distinguishing the several divisions of cards and their records one from another for reference thereto." Then he proceeds to describe his record as a "proposed subdivision or classification carried one or more steps beyond,"

etc. What he does in fact is to make each one of his whole set of cards a separate index or subdivision by the use of a plurality of the means of the prior art with or without the prior division card feature. Whether this be considered a mere multiplication of the prior means, or a rearrangement thereof with resultant change of positioning, or whether it may include the idea of transferring the old tabs or higher division cards to the record cards themselves and retaining the division card as part of the combination, it is merely, as the patentee says, "one or more steps beyond * * * subdividing one or more times the cards referred to, * * * the distinguishing features of the invention will be apparent, viz., the providing of the several cards of a series with distinguishing portions." We do not see how invention can be predicated upon this rearrangement or subdivision. We are unable to see why the person who found, for example, the three divisions of the prior art inadequate for his purpose, could not with a clip of the scissors "subdivide the cards referred to," and why he could not by writing thereon the appropriate subjects represent "* * * as many different kinds of records in the same main record," which, when duplicated as occasion may require, constitute the claimed "series of record cards distinguished in groups by having distinguishing portions differently positioned on the cards of different groups," etc.

In the patent to Fitch & St. John of 1870 for ledger indexes are shown pivoted stiff sheets provided with elevated tabs bearing, respectively, the letters of the alphabet, and so arranged that they can be separately lifted out until the entire length of any given sheet is directly exposed, or the sheets may be entirely removed and returned as in a card index. In view of the manifest adaptability of these sheets to accomplish the stated objects of the patent in suit, we think it fails to show any inventive conception.

Furthermore, the Curtis Publishing Company exhibit of an organization in public use prior to the earliest date of the conception claimed in the patent in suit showed elevated tabs differentiated by colors and clipped corners. There could be no invention in positioning the clipped corners by duplicating the clip at the other end of a card or by subdividing the elevated tabs, or in using the elevated tabs as records instead of, or in addition to, their use for purposes of division. The patent belongs to the same class with those considered in Hollister v. Benedict, 113 U. S. 72, 5 Sup. Ct. 717, 28 L. Ed. 901, Aron v. Manhattan R. R., 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272, and numerous other kindred cases.

The decree is reversed, with costs, and the cause is remanded to the court below, with instructions to dismiss the bill.

LACOMBE, Circuit Judge. I concur in the conclusion reached by the majority of the court, but I do not find in the Fitch & St. John patent, nor in any other patent or publication prior to March, 1892, a sufficient disclosure of the principle of Gunn's device to negative patentable novelty. So far as all prior literature is concerned, it seems to me that he was the first to devise a combination which would

enable one to arrange the cards under a double classification within the same space. An illustration will best show the change he accomplished. Suppose it were desired to classify for reference by means of a card index the various judicial decisions in admiralty, one decision on each card. The various divisions of the subject—e. g., "charter party," "insurance," "navigation," etc.—would be indicated by division cards each with projecting tab appropriately lettered, each of such cards being followed by the recording cards giving decision and citation of the authority. For subdivision under "navigation" other division cards with the tab differently placed would be similarly used for "collision," "towage," etc. And in like manner "collision" could be divided into "ferry boats," "steam vessels," "sailing vessels," etc. Such a single method of division and subdivision might be continued as far as required; but, if it were desired to have all the decisions so classified that at the same time they were divided alphabetically—e. g., "Andrews v. Smith," "Brown v. S. S. Triton," etc.—none of the card indexes of the prior patents would admit of such a double classification, and no prior patent or publication, as it seems to me, would indicate to one skilled in the art how it might be accomplished. By Gunn's system it is easily done. The recording cards may be arranged in alphabetical order of the plaintiff's names (with a division card for each letter of the alphabet), and the other divisions and subdivisions indicated by tabs on the recording cards themselves appropriately positioned. I should be inclined therefore to find patentable novelty were it not for the prior use known as the Curtis Publishing Company exhibit. That places classification marks on the recording cards themselves, while at the same time division cards may be used for effecting double classification. The distinguishing mark in Curtis exhibit is color, instead of differently positioned tabs, and it is not so efficient as Gunn's device, because it is more difficult to pick out colors and the range of differences is perhaps less, but the exhibit does show the fundamental change which differentiated Gunn's improvement broadly from the earlier art, and with the exhibit before him it did not require invention for one skilled in that art to elaborate further improvements calculated to make the card index more convenient for use.