### SCOTT et al. v. HARRIS AUTOMATIC PRESS CO.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1922.)

No. 3692.

1. Patents ⬤▭165—Claims, though limited to particular use, may be construed with other use.

　　Where inventor has placed his invention generally and specifically in the printing machine art, the fact that it is adapted to the lithographic art is not important except in so far as the problems peculiar to that application may assist in determining question of invention.

2. Patents ⬤▭20—Rearrangement of parts to provide more convenient operation not invention.

　　A mere change in the arrangement of parts to provide a more convenient and economical operation of the same instrumentalities is not invention.

---

3. Patents ⬉328—815,857, for printing machine, void for lack of invention.
    The North patent, No. 815,857, for a printing machine, *held* void for lack of invention, in view of the prior art, and also as for a mere aggregation of old elements.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by Isabella Scott, executrix, and David J. Scott, executor, of the will of Walter Scott, deceased, doing business as Walter Scott & Co., against the Harris Automatic Press Company. Decree for defendant, and complainants appeal. Affirmed.

Axel V. Beeken, of New York City (Hull, Brock & West, of Cleveland, Ohio, on the brief), for appellants.

Philip C. Peck, of New York City, for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. This appeal involves the question of the validity and the infringement by appellee of all or either of the claims in United States letters patent No. 815,857 issued March 20, 1906, to the Linotype & Machinery Limited, of London, England, as assignor of the inventor, Thomas M. North, and assigned by that company on May 31, 1917, to the present plaintiff-appellants.

The invention relates to printing machines, particularly of the type known as aluminum rotary machines because their surveillance demands the constant attention of the printer to keep them in perfect running condition. The object of the invention is to provide means whereby the printer, from one and the same position, can ascertain the condition of both the printing plate and the printed sheet.

Claim 7 is perhaps typical, at least it is one of the most comprehensive of the eight claims in this patent and reads as follows:

"In a printing machine, the combination of co-operating form and impression cylinders, a feed board and delivery board at respectively opposite sides of the said cylinders, a stand for the printer, between the delivery board and the cylinders, and sheet-delivery mechanism adapted to conduct the printed sheets from the cylinders, beneath the stand, and deliver them, printed side-up, on the delivery board."

Others of these claims omit some of the elements contained in claim 7, but all of them contain the same basic idea as to the relative position of cylinders, printer's stand, and delivery board.

The defenses alleged are invalidity of the patent by anticipation, prior knowledge, and prior public use, and that all of the claims cover mere aggregations of elements old and well known in the art and not any new or patentable combination thereof and noninfringement of any of the claims of the patent in suit. On the issue so joined the District Court held the patent void on the ground of aggregation and want of invention and dismissed the plaintiff's bill of complaint.

[1] Both in the description and in the claims of the patent the inventor has placed his invention generally and specifically in the printing machine art. Therefore the fact that it is especially adapted to

the lithographic phase of that art is not important except in so far as the problems peculiar to that application may assist in determining the question of invention. Jackson Fence Co. v. Peerless Wire Fence Co. (C. C. A. 6) 228 Fed. 691, 143 C. C. A. 213.

It is admitted by appellants that:

"North knew, not only as a matter of law but as a matter of fact, that the individual elements such as feedboards, printing cylinders, delivery boards, printer's stand, delivery devices and sheet carriers were old in the art, and all that he sought to obtain a patent for was a certain correlation of these elements or a new and advantageous combination of elements so as to obtain a more facile delivery admitting of visibility of the printed sheets coupled with accessibility to the form cylinder. It was doubtless for this reason that he did not attempt to specify the detail features of the elements." Appellants' Brief, 28.

This admission by appellants that all of the elements in North's alleged invention are old makes it unnecessary to review the prior art except in so far as it relates to the question of novelty and invention in North's combination of these old and well-known elements.

It is the claim of the appellants that in the prior art the delivery board was placed directly under the feed board at the end of the machine opposite to the cylinders. That this assembling of parts required the printer to walk from the cylinders to the delivery board to ascertain, by inspection of the printed sheet, the working condition of the printed surface, and then to walk back again to the cylinders to remedy any defects thereon, the existence of which may have been discovered by such inspection; that the North invention places this delivery board directly back of the cylinder and so spaced as to permit the placing of a printer's stand between the two, thereby enabling the printer from his position upon this stand to inspect the printed sheets and to remedy any defects appearing thereby, upon the cylinder without changing his position; and that in furtherance of this purpose the sheet-delivery mechanism is so placed as to conduct the printed sheets beneath the printer's stand or platform or beneath the floor, if a platform is not used, and deliver the sheets on the delivery board, printed side up.

If it were conceded that North was the first to place the delivery board beyond the cylinders instead of under the feed board with the printer's stand located between these elements and the delivery mechanism operating under the same, then the question of fact would be presented whether such change involved invention or merely mechanical skill and commercial enterprise. But North was not the first to change this location of the delivery board, or to place a printer's stand between it and the cylinder. Cottrell in 1890 built and shipped to Perry Mason & Co., to be used in printing the "Youth's Companion," a rotary printing press showing just such a change in the location of the delivery board, and also having a printer's stand between the cylinder and the delivery board. This printing press was successfully operated for about 16 years from and after 1890 and was then traded in upon a new machine and scrapped.

[2] It further appears by the evidence that an operator while standing on the platform of this first Cottrell machine No. 5931 could regu-

late the ink fountain of the printing couple that prints the first side of the sheet, while the press was running, and by turning around could examine the effect of the regulation on the printed sheets as they were delivered, but that if the operator desired to adjust the ink fountain for the cylinder $E$ he would have to descend from the platform and go to the other end of the machine; that this machine printed both sides of the page; and that, if the operator desired to inspect the printing of the other side of the sheet, he would also have to descend from the platform and lift the sheet from the delivery pile. Nor would it have been possible for the operator of the machine to reach either the form cylinder $C$ or the form cylinder $E$ from the printer's stand. It is conceded by the plaintiffs in error that one machine is sufficient to establish the defense of prior use (Egbert v. Lipman, 104 U. S. 333, 336, 26 L. Ed. 755), but they contend that, if this one machine is not exactly the same as that of the patent in the suit, it is persuasive to the conclusion that it did not possess the advantageous characteristics of the successful machine. However that may be, the evidence is conclusive that this Cottrell machine 5931 did involve the same arrangement of parts, and a mere change in that arrangement to provide a more convenient and economical operation of the same instrumentalities is not invention. Specialty Co. v. Fenton Metallic Mfg. Co., 174 U. S. 492, 498, 19 Sup. Ct. 641, 43 L. Ed. 1058; Grinnell Machine Co. v. Johnson Co., 247 U. S. 426, 38 Sup. Ct. 547, 62 L. Ed. 1196.

Cottrell patents Nos. 442,862 and 487,386 do not show the cross-platform and railing of the Cottrell machine No. 5931, corresponding to the printer's platform in North, but in other respects they do show a detailed construction and arrangement of elements similar to the Cottrell machine of 1890.

E. H. Cottrell testified, in substance, that the platform and railing were not shown in the patent because they were no part of the invention and were not considered of sufficient importance to be reproduced in the patent because they put platforms on presses wherever necessary or wherever they would add to the convenience of the operator. That he did not consider the platform where placed on the 1890 machine patentable, or otherwise he would have insisted upon having it put in the later patents.

It is admitted by plaintiff that the H.-W. bag press No. 101 was constructed and assembled by defendant at its factory at Niles, Ohio, prior to February, 1904, and shipped to Arkell & Smiths, February 19, 1904. While this would not establish prior public use for two years before the date of the application for the patent in suit, nevertheless it does disclose prior knowledge by the officers and employés of the defendant company of whatever appears in this construction, for it is not contended on the part of the plaintiff in error that North's invention antedates his application for a patent. There were three presses of this model made by the defendant. The bags were fed from a feed board into the press by hand. There is a cross-platform at the opposite end of the machine, adjacent to the cylinders from which platform the operator can regulate the flow of the ink, get a casual

view of the cylinders in revolution, and examine the printed bags as they are delivered from the machine with the printed side up on the delivery board located in the same relative position to the other parts of the machine as the delivery board in the patent in suit. The delivery mechanism also passes under the cross-platform.

It further appears from the evidence that the operator usually stands on the floor by the side of the machine, but at intervals during the normal operation of the machine he occupies the crouching position shown in Exhibits 1 and 2, and that from this positon he can adjust the flow of ink from the platform while the press is in operation. It is insisted upon the part of the plaintiff in error that this is not a lithographic machine, that the cross-platform is in fact but a cross-brace, and that the form cylinder on the sides which face away from the impression cylinder are obstructed by inking mechanism so that there is no exposed operating surface that can be reached from this platform or brace. The evidence, however, is clear that, whether it be called a cross-brace or printer's platform, nevertheless it was used at intervals by the printer in charge of the operation of the machine. If perhaps it were too narrow to afford the printer a comfortable position, the mere widening of this platform for that purpose would not amount to invention.

It is undoubtedly true that the surface of the form cylinders in the Harris-W. bag press are more or less obstructed by the inking mechanism so as to leave very little of the exposed operating surface, but this same objection obtained, in a lesser degree perhaps, in the patent in suit because of the position of the water rolls. But in actual construction the plaintiff, plaintiff's licensee, and defendant have all increased the available exposed operating surface of the primary form cylinder by placing the water rolls on the opposite side of the machine instead of as shown in the North patent. This change from the original North idea in the location of the water rolls is substantially equivalent to the change in North of the inking mechanism in the Harris-W. bag press to a position that would expose a larger portion of the surface of the cylinder than in the bag press. Nevertheless, it could hardly be contended that the advantage of such change in the position of the water rolls would not be obvious to any practical operator of the machine or that such change would constitute invention.

The machine shown in the Goss catalogue prints a number of webs simultaneously. These webs pass through the printing mechanism and then along the floor underneath a stand at the lower right-hand corner of the machine, thence in a vertical direction to a guide roller, then downward over folding plates into a cutting machine, and then onto a delivery table. It is said that because these webs, after passing under the platform, are folded, cut, and then delivered, the delivery mechanism is entirely different from North's; but it is clear that this difference consists principally in the addition of a folding and cutting mechanism interposed between the delivery mechanism passing under the stand and the delivery table. It is evident that the omission of such intervening mechanism would permit a printer standing upon the platform to examine the printed sheet, printed side up upon

the delivery table. It must also be remembered that North specifically states that any form of delivery mechanism may be used in his machine that will conduct the sheets beneath the printer's stand and deliver them printed side up on the delivery board.

In the Koenig & Bauer catalogue, a printing machine is shown with the platform over the tape which carries the sheets from the delivery cylinder of the press to the collecting cylinder of the delivery. An operator standing on the platform above the delivery board can reach the ink board of the second form cylinder, but perhaps not in such a way that any work can be done upon it. The evidence tends further to prove that an operator standing on this cross-platform or printer's stand can, by leaning over the handrail, provided for that purpose, observe the printed sheets on the outer delivery board.

Hoe 113,769 shows two impression cylinders and two form cylinders with a feed table and a delivery table on the opposite side thereof, with sufficient space between the cylinders and the delivery board for a printer's stand; but no such stand is shown. Tapes are used to deliver the sheets from the printing cylinder overhead to fly sticks, which in turn deliver the sheets in direct line to the delivery table. Hoe differs from North principally in the fact, that his machine is an overhead delivery and no printer's stand is shown, although it would seem from the evidence that such a stand would be necessary or at least advantageous in the operation of a machine. Both of the Cottrell patents, Nos. 319,459 and 424,097, show reciprocating flat bed presses with a rotary cylinder and a feed board and delivery table on opposite sides of the printing mechanism. 424,097 specifically relates to a printing machine for type, plate, or lithographic printing, and in this particular machine there would appear to be sufficient space between the delivery table and the forward thrust of the reciprocating form bed to permit a printer to stand between the two in safety. From this position he could inspect the form bed and printed sheets.

If we are mistaken in this conclusion, nevertheless both of these patents, taken in connection with other citations to the prior patent art, show an advance in the development of printing machinery, before North came into the field, that left little room for invention, especially in the way of a new combination of old elements. This is further shown by the Wendte patents, No. 517,908 and No. 550,735, both relating to sheet feed rotary presses for multicolor printing, White No. 689,527 and White No. 770,486, Linder 738,821, and other patents introduced in evidence, that it is unnecessary to discuss in detail.

Plaintiff in error insists, however, that none of these citations cover his combination in detail, and particularly that in addition to the printer's stand the pile delivery in the North combination is new and novel. However, none of North's claims call for a pile delivery, but, on the contrary, for a delivery board at the opposite side of the form cylinder from the feed board. The pile delivery is fully covered by Roesen No. 782,924, and the substitution of the Roesen pile delivery for a delivery board is not invention.

[3] It would therefore appear that North's combination presents nothing new or novel in the printing machine art beyond that which

would naturally occur to an expert printer, and involves nothing beyond mechanical skill in the adaptation of the then existing rotary printing machine to lithographic printing.

If, however, it were conceded that the record fails to disclose prior use, prior knowledge, and patent anticipation of the North combination of old elements, nevertheless the trial court was right in finding that the claims of the patent do not embody a patentable combination.

While it is undoubtedly true that each element that enters into a patentable combination need not necessarily change or affect the action of others, yet it is equally true that each element of such combination must co-operate with all others and perform its particular duty in accomplishing the final results.

The platform introduced by North into his combination, and which enters into every claim and apparently constitutes the basic idea of North, may, perhaps, be advantageous in economy and convenience of operation; nevertheless it performs no function in and of itself in the operation of the printing machine. In other words, this machine will, in the absence of the human agency, operate identically in the same manner and produce exactly the same results with or without the platform. Therefore it does not even function with the other elements of the combination, nor does it constitute an instrumentality through which and by which the printer performs his duty in the operation of this printing machine. It is no part or parcel of the machinery by and through which results are obtained. It merely provides a convenient position for the printer, and aside from that it has no purpose or connection with the operating parts of the machine. Grinnel v. Johnson, 247 U. S. 426, 38 Sup. Ct. 547, 62 L. Ed. 1196; Richards v. Chase Elevator Co., 158 U. S. 299, 302, 15 Sup. Ct. 831, 39 L. Ed. 991; Union Co. v. Keith, 139 U. S. 530, 11 Sup. Ct. 621, 35 L. Ed. 261; Fond du Lac v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714, and cases there cited; Hailes v. Van Wormer, 87 U. S. (20 Wall.) 353, 22 L. Ed. 241; Gas Machinery Co. v. United Gas Improvement Co., 228 Fed. 684, 143 C. C. A. 206, and cases there cited.

For the reasons above stated the judgment of the District Court is affirmed.