**DALLAS MACHINE & LOCOMOTIVE WORKS, Inc., v. WILLAMETTE-HYSTER CO. et al.**

No. 9342.

Circuit Court of Appeals, Ninth Circuit.

June 11, 1940.

Rehearing Denied Aug. 21, 1940.

Theodore J. Geisler, of Portland, Or., for appellant.

Albert G. McCaleb, of Chicago, Ill., and Austin F. Flegel, Jr., of Portland, Or., for appellees.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appeal is taken from a decree in favor of appellees in a suit brought by appellant for infringement of a patent owned by it.

The suit was based on Gerlinger patent No. 1,457,025 issued May 29, 1923, on an application filed March 30, 1922, and covered a "straddle-type" truck. In general, such trucks, by a front or rear view, in shape resemble a square with the bottom or lowest horizontal side omitted. The upper horizontal side is framework in or on which is placed the engine, the parts connecting therewith, which provide locomotion and power to raise or lower the load, and the operator's seat. The vertical sides are also framework, to which are attached the wheels and the means to which the power is applied in order to lift the load. In operation, the truck is driven over the load to be moved, such as a pile of lumber; lugs or projections are moved underneath the load so that the load rests thereon; power is applied to the lifting device to which the lugs are attached, thereby raising the load. When locomotion is applied, the entire load is thus moved to the desired location, where the lifting device operates in reverse to discharge the load.

The art discloses a number of "straddle-type" trucks, prior to the one conceived by Gerlinger. Appellant claims that the principal differences between the Gerlinger truck and the prior art are: (1) that in the prior art the lifting device consists of cable or chains shortened by winding on drums thus imparting the lift, and which depend on gravity to lower the load, whereas Gerlinger uses racks and pinions which both positively lower and raise the load; (2) that Gerlinger discloses automatic means for stopping the movement of the lifting device at a predetermined point and for applying a brake-mechanism to hold the load at such point, which means were not disclosed in the prior art. It is said that the cable-lifting-device did not operate uniformly at all

four points, and failed to operate at all in some instances.

In general, the "straddle-type" truck is a combination of a truck and an elevator or hoist. The cited prior art consists of 23 prior patents, some of which it will be unnecessary to notice. The prior art may be classified into three groups; (1) full "straddle-type" trucks; (2) partial "straddle-type" trucks, or trucks having an elevator or hoist at one end; and (3) elevators, hoists and cranes. The earliest form of a "straddle-type" truck was a crude one disclosed by Boudinot patent No. 537,628, issued April 16, 1895. It consisted of a wagon with inverted "U" shaped axles upon which rested a frame containing drums, by the revolution of which (by hand) chains attached thereto were shortened, thus lifting the load around which the chains were placed. The next disclosure was Benton patent No. 1,092,088, issued March 31, 1914, and was a tractor with large rear wheels, using a chain which was shortened by winding the same on an axle.

Clark patent No. 1,200,411, issued October 3, 1916, was the first disclosure of the type of truck involved in the patent in issue, except as above stated. Thereafter, such a truck was disclosed in the following patents: Ross patent No. 1,209,209 issued December 19, 1916; Ross patent No. 1,271,947 issued July 9, 1918; Overlin patent No. 1,289,529 issued December 31, 1918; Overlin patent No. 1,323,719 issued December 2, 1919; Overlin patent No. 1,349,292 issued August 10, 1920; and Gerlinger patent No. 1,422,958. With that "birds-eye" view of the art, it can be seen that "straddle-type" trucks were not a new conception by Gerlinger. Other cited patents in the prior art will be discussed subsequently.

The specification of the patent in issue states objects, two of which are as follows:

"An object of the invention is to provide an improved form of lifting device that will have four lifting points that lift positively and in unison.

"Another object is to provide a form of automatic stop for the lifting device that will operate when the limit of movement in either direction is reached, and also apply a brake mechanism."

The only claim in issue is claim 4. Separated into parts the claim covers a

lumber carrier consisting of: "[1] a frame, [2] load lifting means mounted therein, [3] means for transmitting motion from a source of power to the load lifting means comprising a clutch that can be set in neutral position or to cause the load lifting means to move in either direction, [4] means for manually moving the clutch to operative position, [5] automatic means for moving the clutch to neutral position upon a movement of the load lifting means to a predetermined extent in either direction, [6] and means for braking the transmitting means whenever the clutch is moved to neutral position." The claim is very broad. Appellant insists that the claim may not be narrowed, so we consider each part of the claim in its full breadth without limiting it to the precise form disclosed in the specification and drawings.

## The Frame

The first element claimed is "a frame". All the "straddle-type" trucks in the prior art have "a frame".

## Load-lifting Means

The second element is "load lifting means mounted" on the frame. All the prior "straddle-type" trucks have, broadly, "load lifting means mounted" on the frame. While Gerlinger uses a rack bar and pinion, not found in the prior "straddle-type" trucks, the claim is not limited to the rack bar and pinion, but covers all such "means". It, therefore, claims nothing new. It is here that appellant claims novelty in the use of the rack bar and pinion. While insisting that the claim may not be limited, he attempts to show novelty by, at the same time, claiming that a rack bar and pinion was new. Under the language of the claim, it is immaterial what precise "means" is used, for the claim is not limited to such precise "means" but to all "means". Such a means was disclosed in all the prior art.

## The Clutch Connecting The Lift

The third element is described in the claim as "means for transmitting motion from a source of power to the load lifting means comprising a clutch that can be set in neutral position or to cause the load lifting means to move in either direction". More simply stated, this element is a reversible clutch which can be set in neutral position. Although somewhat obscure, the claim covers nothing but a clutch, by which power is transmitted to the lifting means. That the third element (as well as the sixth which covers a brake) was not new, is shown by the following excerpt from the specification: "Any desired form of reversible clutch may be used and any old or common form of brake for the driving mechanism of the lifting device, and therefore it has not been thought necessary to illustrate the details of any specific clutch or brake mechanism * * * "

## Manual Clutch Operative Means

The fourth element is described in the claim as "means for manually moving the clutch to operative position". Such means shown in the drawing is a lever, although the claim is not restricted to that precise form. However, such a "means" is shown in the form of a lever in practically all the prior art, so that the element claimed is not new.

## Automatic Clutch Operative Means

The fifth element is one claimed to be novel and is described as "automatic means for moving the clutch to neutral position upon a movement of the load lifting means to a predetermined extent in either direction". It is unnecessary to discuss the precise form of the "automatic means" disclosed in the specification and drawings of the patent in question, because the claim is not restricted to any particular form but describes any "means".

Dingee patent No. 414,380, issued November 5, 1889, covers an elevator. It disclosed automatic means for disengaging the friction clutch and at the same time applying a brake. Projections were placed on a rope or cable which was attached to an eccentric. When an arm on the elevator arm contacted the projections on the cable either in rising or descending, the rope actuated the eccentric, which in turn disengaged the friction clutch and applied a brake.

The Brunelle patent No. 1,054,900 issued March 4, 1913, covered a platform elevator raised by means of a drum and cable. A lug on a platform, after rising, contacted a lug on a rod which then automatically disengaged the clutch. The automatic means, however, operated only when the movement of the platform was upward, but did not operate when the movement was in the opposite direction.

Winkley patent No. 1,163,799 issued December 14, 1915, also discloses an automatic means for disengaging a clutch used

on a machine. While it might be possible to adapt it to an elevator, such adaptation is not shown in the patent and for that reason a further description thereof need not be made.

The Towson and Cochran patent No. 1,337,804 issued April 20, 1920, discloses automatic means for breaking an electric circuit operating a reversible electric motor, which in turn operates a platform on one end of a truck. We doubt the application of this patent for no clutch, or its equivalent, is involved. For the same reason we doubt the applicability of the Nicholson and Whitestone patent, No. 1,340,458, issued May 18, 1920, the French and Pavey patent No. 1,360,917, issued November 30, 1920, and the Carr patent No. 1,407,124, issued February 21, 1922. All such patents have automatic means for breaking an electric circuit, which stops an electric motor, which, in turn, operates an elevator on one end of a truck. The element in question is specifically directed to an automatic means for moving a "clutch" to neutral position, and does not include automatic means for "stopping" electric current or an electric motor.

### The Brake

The sixth and final element is described as "means for braking the transmitting means whenever the clutch is moved to neutral position" and in simple words means a brake. The use of a brake was not new, since all the prior art contains a brake. That such use was not new is disclosed by that part of the specification quoted under the discussion of the clutch as the third element.

### The Issues

Appellant, by assignment, became the owner of the patent in issue, and brought this suit to enjoin appellees from infringing the patent in issue and for an accounting. Among the defenses raised by the answer were the following: (1) the patent in suit was void because anticipated; (2) it was void because it was only an aggregation of well-known parts; (3) to be valid, the claim in question must be restricted, and if restricted, there was no infringement; and (4) relief should be denied because appellant was guilty of laches. The cause was referred to a special master who held that the third and fourth defenses should be sustained. The trial court sustained all four defenses, and entered a decree accordingly, hence this appeal.

### Validity Of The Claim

Appellant contends that the patent is valid because it is a combination, and two elements which it uses are not found in any of the "straddle-type" trucks in the prior art. One of the new elements is said to be the rack bar and pinion used to raise the load. While it is true that the prior art does not disclose use of such a rack bar and pinion, the difficulty with the contention is that the claim is not restricted to a rack bar and pinion but covers any and all "load-lifting means". The prior art discloses "load-lifting means", and therefore the claim, as to such element, points to nothing new. The other element claimed to be new, is the automatic means for disengaging the clutch. While none of the "straddle-type" trucks in the prior art disclosed such automatic means, as noted above, such automatic means were used on elevators. Were we to decide the case on the ground of anticipation, it would be necessary to determine whether or not anticipation could be shown by such devices of a different nature. We find it unnecessary to make such a determination here.

We have heretofore called the different parts of the claim "elements", but in fact most all of such parts have various elements in themselves. The claim, in a broad sense, may be said to cover a combination of elements, but actually it covers a combination of combinations. Each of the parts is complete in itself. For example, the clutch performs no new or different function in the "straddle-type" truck than it does when used in any other machine. Its sole purpose is to control the transmission of power. The same may be said for the other parts. The automatic means for moving the clutch to neutral position, so much relied on here, performs no new or different function when used in a "straddle-type" truck, than it does when used in Dingee's elevator. Its sole purpose is to disengage the clutch, and it does so, whether used in an elevator, or in the "straddle-type" truck.

We believe, therefore, that the applicable rule is the one stated in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008, that the "mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new

or different function or operation than that theretofore performed or produced by them, is not patentable invention". The rule is more fully stated in Hailes v. Van Wormer, 87 U.S. 353, 368, 20 Wall. 353, 368, 22 L.Ed. 241, as follows:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result, the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination."

See, also, Reckendorfer v. Faber, 92 U. S. 347, 357, 23 L.Ed. 719; Pickering v. McCullough, 104 U.S. 310, 318, 26 L.Ed. 749; Double-Pointed Tack Co. v. Two Rivers Mfg. Co., 109 U.S. 117, 120, 3 S. Ct. 105, 27 L.Ed. 877; Burt v. Evory, 133 U.S. 349, 359, 10 S.Ct. 394, 33 L.Ed. 647; Fond Du Lac County v. May, 137 U.S. 395, 407, 11 S.Ct. 98, 34 L.Ed. 714; Brinkerhoff v. Aloe, 146 U.S. 515, 516, 13 S.Ct. 221, 36 L.Ed. 1068; Wright v. Yuengling, 155 U.S. 47, 53, 15 S.Ct. 1, 39 L.Ed. 64; Office Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U.S. 492, 498, 19 S.Ct. 641, 43 L.Ed. 1058.

Inasmuch as we think the claim in question covers various devices which perform the same function for which they were previously used, we think it covers only an unpatentable aggregation and is void. Whether the claim could be limited to the product described in the specification and drawings, and if limited whether it is valid, are questions which we need not and do not decide.

Affirmed.