## KROGER GROCERY & BAKING CO. v. FIRST NAT. STORES, Inc., et al.

### Civil Action No. 563.

District Court, D. Massachusetts.

March 14, 1941.

As Amended April 4, 1941.

Herbert W. Kenway (of Kenway & Witter), of Boston, Mass., and A. Yates Dowell, of Washington, D. C., for plaintiff.

Daniel J. Lyne and Lyne, Woodworth & Evarts, all of Boston, Mass., for defendant First Nat. Stores.

Herbert A. Baker, of Boston, Mass., for defendants.

SWEENEY, District Judge.

In this action the plaintiff seeks an accounting of the defendants' profits growing out of an alleged infringement of the plaintiff's patent No. 1,924,963, and an injunction against further infringement of it. The defendants assert that the patent is void for want of invention, but that, if valid, its claims are so limited by the prior art that the defendants' device does not infringe it. The claims in suit are claims 3 and 4. Claims 2 and 6 were withdrawn in open court.

### Findings of Fact.

It has been agreed by the parties that title to the patent is vested in the plaintiff. The defendant J. W. Gately Sons, Inc., installed for the defendant First National Stores, Inc., some of the devices which are alleged to be infringements of the plaintiff's patent. Both the plaintiff and the defendant First National Stores, Inc., are operators of chain grocery stores; the former operating principally in the Midwest and the latter operating principally in the East. In the operation of their numerous stores both parties were met with the problem of economical delivery of commodities to the individual stores for resale in such a manner as to provide receipt of the goods in good order free from pilferage and damage. It was likewise desirable that the delivery of goods should be at an hour when the clerks in the store were not busy with the store trade. Delivery to the outside of the entrance to the store during the nighttime resulted in great loss and waste.

The patent in suit covers a device designed to permit delivery of goods at night to the inside of the individual stores in a manner to exclude the delivering person from the rest of the store where its goods for sale are kept. The device operates to wall-off a portion of the store just inside of the entrance door with a canvas partition, so that the delivery may be made inside the store, and access limited to the walled-off area immediately about the door. To accomplish this, the patentee devised a scheme whereby a continuous canvas wall would run from one side of the entrance doorframe around a pre-determined area, and back to the other side of the doorframe, both ends of the canvas being securely affixed to the sides of the doorframe. The canvas would be of sufficient height so that one could not climb over it without leaving evidence that this had been done. In effecting a delivery of goods, the delivering person would let himself into the store with a key, would leave his goods within the canvas walled area, and would depart locking the door behind him. Ordinarily, during the daytime the canvas was rolled back to a position behind the door and left attached to one side of the doorframe. At night to set up the device the

canvas was simply unrolled, attached to uprights at pre-determined distances from the doorframe which acted as supports for the partition, and then was run around other uprights and back to the opposite side of the doorframe where it was securely fastened. The uprights were held in position by chains or rods which anchored them.

### Validity

A brief reference to the prior state of the art will indicate clearly that the plaintiff's device is merely the application to a new situation of an old device which had been previously applied to analogous uses, and that there was no inventive skill involved in the creation of this device. There is no improvement over the old idea of anterooms and vestibules of houses and buildings, except that the plaintiff's device is collapsible and removable. While vestibules and anterooms were not common in retail stores, nevertheless, such arrangements did exist. The permissive entrance of the public to a portion of a store with provision for barring their access to other portions is as old as buildings themselves.

Nor is there invention by providing for collapsible or removable walls. Such a provision undoubtedly results in convenience to the owners of the store and to its patrons, but collapsible inclosures are at least as old as the first circus tent. The walling-off of a portion of a room by collapsible screens, as in a hospital, certainly antedated this patent.

Reference to prior patents clearly indicates that the plaintiff's device results from the application of a minimum amount of mechanical skill to devices that are already known and patented.

James, No. 800,111, in 1905 obtained a patent for a device to partition a room by roller curtains which pulled out from adjacent walls. When drawn to the desired point they met, and provided a walled-off section of the room. The addition of a lock or locking device at the intersection would be all that would be required to render the inclosed area suitable to the purpose of this plaintiff. The mere addition of such a locking device could not result in invention. See County of Fond du Lac v. May, 137 U.S. 395, 11 S.Ct. 98, 34 L.Ed. 714.

Jorres, No. 933,711, which was issued on September 7, 1909, and which was not cited by the Patent Office as prior art, showed a wooden box arranged inside of a store for a purpose identical with that of the plaintiff's device. Jorres provided a box whose height approximated that of the entrance door, one corner of the box being affixed to the side of the doorframe nearest the handle of the door. It was placed at an angle which permitted the entrance door to swing open to a point where the entrance door was stopped by a chain running from the other front corner of the box to the other side of the doorframe. When the entrance door was thus opened, it provided a walled-in area (the box itself) to which the delivering person had entrance, and beyond which he could not go. The delivery of goods into this device was accomplished in the same way in which the plaintiff's deliveries are made.

Over and above these patented devices the defendants have drawn attention to a device similar to the plaintiff's which was used in the Shepard Store in Boston from 1915 to 1930. Shepard ran a retail store on the first five floors of a building on Tremont Street. The store closed about 5:30 P.M. On the top three floors of the building, and separated from the store, Shepard also ran restaurants. Access to elevators to take one up to the restaurant floors could be had only through the store entrance. In order that access to the restaurants might be had after the store closed, Shepard provided for a walled-off canvas passageway from the store entrance door directly to the elevators which would permit the public to have access to the restaurants, and at the same time bar them from the closed section of the retail store. While the purpose of the Shepard use was not identical with that of the plaintiff, no further adjustment to the Shepard device would be necessary in order to effect its purpose than the locking of the elevator doors. Clearly, what the plaintiff has done is to adapt old and well-known devices to a new purpose. An obvious use of old devices is not patentable, even though it may appear to be new. See Aron v. Manhattan Railway Company, 132 U.S. 84, 10 S.Ct. 24, 33 L.Ed. 272.

I find that the creation of the plaintiff's device involved no inventive skill, and I rule that the patent is void for want of invention.

### Infringement.

Assuming for the purpose of the final disposition of this case that the plaintiff's patent could be held to be a good one, in any view of prior art, it must be nar-

rowly construed and limited to plaintiff's detailed construction as set out in his patent. The language of claims 3 and 4, which reads as follows:

"3. The combination with a store for the sale of merchandise, of a collapsible partition adapted and arranged to separate from the remainder of the store a space adjacent to its entrance, means for securing said partition in place to divide said space from the remainder of the store with the door of the store opening into the space thus partitioned off from the remainder, whereby the portion of the store containing the normal inventory may be so separated from the space adjacent the entrance that goods may be delivered within the store and inside the door at the entrance to the store without permitting access from said entrance to the inventory in the remainder of the store.

"4. A store provided with a doorway, a closure for said door-way, furniture within said store for use in displaying and selling the merchandise, a collapsible partition secured to the respective sides of the door-way and extending back into the store to separate a space adjacent the door-way from the remainder of the store, and means for locking said partition in position, whereby a store is provided having a space adjacent the door-way for receiving goods effectually separated from the remainder of the store so that the normal inventory therein is inaccessible to the parties delivering the goods."

is extremely broad, but the range of equivalents to which the plaintiff would be entitled if its patent were valid would be extremely narrow.

The use of shower bath curtains, portable play pens for children, voting booths and hospital screens were all old and were adjustable by some variation to the purpose for which the plaintiff utilized its device. In the light of this prior art its patent, if valid, must be limited to the structure shown in its drawings. The defendants' device is not at all similar in operation or construction to the plaintiff's. The defendants provide for a canvas walled partition which is unrolled from the ceiling at night, and affixed to the floor and to the sides of the doorframe. During the day the defendants' device is rolled up like a window shade and affixed to the ceiling. It has no need for uprights since the frame of the walled-in area is determined by the frame affixed to the ceiling. The structure is entirely dissimilar from the plaintiff's. While it accomplishes much the same result as the plaintiff's structure it does it in a mechanically different manner. The defendants' device does not read upon claims 3 and 4 as limited by the disclosure contained in the plaintiff's patent application.

I therefore find and rule that there would be no infringement of the plaintiff's patent by the defendants' device if it were valid.

### Conclusions of Law.

From the above I therefore conclude that the plaintiff's patent is void, but that if valid claims 3 and 4 are so limited by the prior art that the defendants' device does not infringe these claims.

Judgment may be entered for the defendants with costs.